UNITED STATES *v.* HIRSCH, STEIN & CO. (No. 1818).[1]

CONTAINERS.

Where glue was bought at a gross price, packed in bags, the value per pound, for tariff purposes, was the *gross* price divided by the net weight in pounds.—United States *v.* Francklyn (4 Ct. Cust. Appls., 54; T. D. 33306). Paragraph R of section 3, tariff act of 1913.

United States Court of Customs Appeals, May 14, 1917.

APPEAL from Board of United States General Appraisers, G. A. 8010 (T. D. 36925).

[Reversed.]

*Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of counsel), for the United States.

*Curie, Smith & Maxwell* (*Thomas M. Lane* of counsel) for appellees.

[Oral argument May 3, 1917, by Mr. Hanson and Mr. Lane.]

Before MONTGOMERY, SMITH, BARBER, VE DRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise consists of sheet glue packed in bags, imported under the tariff act of October 3, 1913. It is conceded to be dutiable under paragraph 34 of that act at 1 cent per pound if "valued not above 10 cents per pound" and at 15 per cent ad valorem if "valued above 10 cents per pound and not above 25 cents per pound." The value of the glue per pound was not specified by the importers in the invoice or entry. In both of these the value of the importation was stated in gross. The sole question in the case relates to the method of calculation which should be pursued in order to ascertain the value

of the glue per pound for the purpose of classifying it under the foregoing provisions.

The gross weight of the glue and bags was 21,977 pounds. The net weight of the glue was 21,527 pounds, the bags and other tare, if any, weighing 450 pounds. The total dutiable value of the importation, including both glue and bags, was $2,171. It is therefore manifest that if the total dutiable value, viz, $2,171, be divided by the gross weight in pounds, viz, 21,977 pounds, in order to determine the value of the glue per pound, the value would be fixed at less than 10 cents per pound, and the applicable rate of duty would be 1 cent per pound. On the other hand, if the total dutiable value be divided by the net weight of the glue in pounds, viz, 21,527 pounds, the resulting value would be more than 10 cents per pound, and the applicable rate of duty would be 15 per cent ad valorem.

The collector adopted the second method of calculation, that is to say, he divided the total dutiable value by the net weight of the glue, and accordingly found the value of the glue to be more than 10 cents per pound. Duty was thereupon assessed at the rate of 15 per cent ad valorem.

The importers filed their protest, and addressed their claim to the collector as follows:

(3) That you have erroneously divided the net weight of the glue into the total dutiable value for the purpose of ascertaining the value per pound, or by other improper and erroneous methods have determined said value to be in excess of 10 cents per pound.

(4) That said glue is invoiced, bought, and sold upon the basis of gross weight, or "gross for net," and that the value per pound, ascertained by dividing the total dutiable value by gross weight as returned by the United States weigher, is not over 10 cents per pound.

The Board of General Appraisers in a majority decision sustained the contention of the importers, saying:

We do not think that the collector was warranted in thus dividing the gross amount of the appraised value by the ascertained net weight of the glue, for the reason that the gross appraised value did not represent the value of the glue but the value of the glue plus the cost of packing. If protestants had purchased the glue at 98 marks per kilogram or 115.6 crowns per 100 kilograms, packing extra, then the collector's course in ascertaining the net value of the glue would have been the correct one.

The Government appeals from this decision.

It appears in the record that the importers purchased the merchandise abroad at a gross price in its packed condition, and that the weight and value thereof were accordingly invoiced and entered in gross. The entry, however, also disclosed the separate value of the bags, and their separate weight was duly reported by the weigher. The appraiser approved the entered value, and made the following indorsement thereon, viz, "Glue val. not over 10 c. lb. 1 c. lb." It is manifest, however, that this entry was designed by the appraiser

as an advisory classification only, and not as an independent appraisal of value. It is disclosed by the record that the appraiser and the collector disagreed concerning the method to be pursued in determining the value of the glue for purposes of classification, the appraiser adopting the method contended for herein by the importers, the collector adopting that contended for by the Government. The data for the respective methods of calculation, therefore, are not really in dispute in the case, but only the question as to which method shall be adopted as the correct one.

Upon this view of the facts we think that the present issue is identical with that decided by this court in the case of United States *v.* Francklyn (4 Ct. Cust. Appls., 54; T. D. 33306). The importation in that case was cement packed in barrels, imported under the tariff act of 1909, and dutiable at $5 per ton if valued above $10 and not above $15 per ton, or at $10 per ton if valued above $15 and not above $30 per ton. Following a long-established customs practice the court in that case held that in determining the value of the cement per ton for purposes of classification under these provisions the total dutiable value of the cement and barrels should be taken as the dividend, and the net weight in tons of the cement alone should be taken as the divisor. The resulting quotient was held to be the value of the cement per ton within the purview of the statute. This conclusion was based upon subsection 18 of section 28 of the tariff act of 1909, which provided that whenever imported merchandise was subject to an ad valorem rate of duty, *or to a duty based upon or regulated in any manner by the value thereof,* the duty should be assessed upon the actual market value thereof in the principal markets of the country of exportation at the time of exportation, and that such actual market value should be held to be the price at which such merchandise was freely offered for sale to all purchasers in said markets, in the usual wholesale quantities, including the value of all cartons, cases, crates, boxes, sacks, barrels, etc., and other containers and coverings, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. The section further provided that the word "value," whenever used in the act, or in any law relating to the appraisement of imported merchandise, should be construed to signify value as above defined. In accordance with these provisions the "value" per ton of the imported cement, upon which its classification for duty depended, was held to mean the value per ton of the cement as proportionately enhanced or increased by the value of its coverings.

The court, by Montgomery, Presiding Judge, said:

The opinion of the board was in accord with the foregoing, but the collector's action was reversed by the board on grounds not stated in the opinion, presumably on the

ground that the proper divisor to be used in ascertaining the rate would be the weight of the cement with the coverings added. We think this was not permissible. The coverings were not *dutiable* by weight, as is provided in certain paragraphs of the act, notably paragraphs 86, 219, 248, and 292. Under section 2898, Revised Statutes, the weight of coverings is allowed as tare. Under subsection 18 the *value* of the coverings is added to the per se value of the cement and enhances the value of the cement itself, and is, in the absence of express provision, not to be considered in determining the weight. It stands for this purpose on the same footing as the "other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States."

We can not see any real distinction between the foregoing decision and the ruling contended for by the Government in the present case. The provisions of the statutes which govern the respective cases are essentially similar. The identity of the issues will appear from the following copy of part of the protest filed in the Francklyn case:

COLLECTOR OF CUSTOMS.

SIR: Protest is hereby made against your decision assessing duty at $10 a ton or other rate or rates on certain Keene's cement and other merchandise covered by entries below named. The grounds of objection, under the tariff act of August 5, 1909, are that said merchandise is dutiable at $5 a ton under paragraph 88, as the same is valued at less than $15 a ton and over $10 a ton. We maintain that in determining the value of the cement the value of the containers should be excluded, or if the value of the containers is included in the value of the cement that the gross weight of the cement, including barrels, should be taken in order to determine the value of the cement per ton.

Upon the issue presented by the protest the court held, as already stated, that for purposes of classification the value of the cement should be ascertained by dividing its net weight in tons into the total dutiable value of the importation; that is to say, the gross value of the cement and the barrels taken together. If, therefore, the value of cement per ton be properly ascertainable for purposes of such a classification by dividing the net weight in tons into the total dutiable value of the importation, it must equally be true that the value of the present glue per pound should similarly be ascertained by dividing its net weight in pounds into the total dutiable value of the importation.

We think that this rule is not affected in any case by the mere form of the invoice or entry.

In announcing the decision in the Francklyn case, supra, the court said:

A rehearing has been granted in the case, and this question has been discussed at much greater length and with much fuller citation of authorities, and while still adhering to the view that, were this question one of first impression, there is great force in the view contended for by the importer here and first adopted by this court, we feel constrained to depart from our former holding, and upon the ground of legislative adoption of a long-continued customs practice and of decisions of the Board of General Appraisers hold that the contention of the Government should prevail.

We may say that no change has been made in the law since the date of the decision just cited such as should lead us to depart from the conclusion therein announced. The terms of paragraph R of section 3, tariff act of 1913, in respect to this issue are substantially identical with those of the tariff act of 1909, which were dealt with in that case. Nor does it seem necessary to review again the authorities upon which the decision was rested.

The decision of the board is therefore *reversed.*