WHITTAKER, CLARK & DANIELS, INC. *v.* UNITED STATES (No. 4551) [1]

[1] C. A. D. 360.

United States Court of Customs and Patent Appeals, March 25, 1947

*Lane, Young & Fox* (*William H. Fox* of counsel) for appellant.
*Paul P. Rao*, Assistant Attorney General (*Sybil Phillips*, special attorney, of counsel), for the United States.

[Oral argument February 12, 1947, by Mr. Fox and Miss Phillips]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, C. D. 985, holding certain talc in the form of powder, imported in paper bags, dutiable at 35 per centum ad valorem under paragraph 209 of the Tariff Act of 1930, as assessed by the collector at the port of New York, rather than at 17½ per centum ad valorem under that paragraph, as modified by the trade agreement with Canada, T. D. 49752, 74 Treas. Dec. 235, 243, as claimed by the importer (appellant).

The pertinent part of paragraph 209 of the Tariff Act of 1930 reads:

Talc, steatite or soapstone, and French chalk, crude and unground, one-fourth of 1 cent per pound; ground, washed, powdered, or pulverized (except toilet preparations), 35 per centum ad valorem; * * *

As modified by the trade agreement, paragraph 209, so far as pertinent, reads:

Talc, steatite or soapstone: Ground, washed, powdered, or pulverized (except toilet preparations), valued at not more than $14 per ton     17½% ad val.

The facts in the case were stipulated by counsel for the parties. It appears from the stipulation that the merchandise was purchased, entered, and appraised in its packed condition at a unit price of $24.50 per 2,000 pounds gross weight; that the entered and appraised value included the weight of the paper bags and the cost of packing;

that the weight of the paper bags was 1,344 pounds; that the gross landed weight, including the paper bags, was 135,368 pounds; and that for the purpose of this case, the total appraised value was properly computed by the collector to be $842.

It further appears that in ascertaining the *total dutiable value*, the collector used the official *gross landed weight of 135,368 pounds*, which included the weight of the paper bags, and the appraised unit value of $24.50 per 2,000 pounds; that for classification purposes the collector computed the value per ton on the *net landed weight of the powdered talc—134,042 pounds*, used the long ton of 2,240 pounds and found that the value of the merchandise exceeded $14 per ton, and, accordingly, assessed the merchandise at 35 per centum ad valorem under paragraph 209, *supra*.

It further appears from the stipulation that if the collector had used the short ton of 2,000 pounds as the unit of weight in ascertaining the value of the merchandise per ton, he would have found a value of less than $14 per ton, whether he employed the gross landed weight or the net landed weight; and that if he had used the gross landed weight of 135,368 pounds, in accordance with the appraised value, and the long ton of 2,240 pounds as the proper unit of weight to be used in ascertaining the value per ton, he would have found a value of less than $14 per ton; whereas, if it were proper for the collector to use the net landed weight, as he did, and the long ton of 2,240 pounds, he was right in holding that the value of the merchandise was more than $14 per ton.

It clearly appears from the stipulation entered into by counsel for the parties that the appraiser appraised the involved merchandise at $24.50 per 2,000 pounds gross weight and that he did not appraise the merchandise at $24.50 *per ton*, although it so happens that 2,000 pounds is a so-called "short ton."

Section 2951 of the Revised Statutes provides as follows:

SEC. 2951. Wherever the word "ton" is used in this chapter, in reference to weight, it shall be construed as meaning twenty-hundred-weight, each hundred-weight being one hundred and twelve pounds avoirdupois.

It is not contended here by counsel for appellant that the quoted section has been repealed. On the contrary, counsel for appellant contends that as the appraiser appraised the merchandise on the basis of 2,000 pounds, the collector erred in using the long ton of 2,240 pounds in determining the value per ton of the involved merchandise. We are unable to agree with counsel for appellant in that respect. We think the provisions of section 2951, *supra*, are mandatory and that the collector properly used the long ton of 2,240 pounds as the proper unit of weight in determining the value per ton of the involved merchandise

The principal issue before the court is whether, in classifying the

merchandise for duty, the collector should have used the net weight of the talc—134,042 pounds, as he did, or the gross landed weight—135,368 pounds.

It is argued here by counsel for the Government, and the trial court held, that the issue under consideration is controlled by the decisions of this court in the cases of *United States* v. *Francklyn*, 4 Ct. Cust. Appls. 54, T. D. 33306, and *United States* v. *Hirsch, Stein & Co.*, 8 Ct. Cust. Appls. 121, T. D. 37226, and section 315 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. So far as pertinent, section 315 reads:

* * * Insofar as duties are based upon the quantity of any merchandise, such duties shall, except as provided in paragraph 813 and section 562 of this Act (relating respectively to certain beverages and to manipulating warehouses), be levied and collected upon the quantity of such merchandise at the time of its importation.

In the case of *United States* v. *Francklyn, supra,* certain cement in barrels was assessed for duty by the collector at $10 per ton under paragraph 88 of the tariff act of 1909 on the theory that in order to determine the rate of duty applicable to the merchandise there involved, the *value of the containers or barrels* should be added to the *per se* value of the cement and that, therefore, the value of the cement was above $15 and not above $30 per ton. The importer, in that case, protested the collector's classification, claiming that the collector had no authority to add the *value* of the containers or barrels to the *per se* value of the cement returned by the appraiser, but that if the collector had authority to add to the *per se* value of the cement the value of the containers or barrels, duty should have been assessed in accordance with the gross weight of the merchandise, that is, the weight of the cement and the barrels.

The court there stated that the issue in the case was whether "the value of the coverings and other charges should be added to the *per se* value of the merchandise to constitute a dividend, which should be divided by the quantum of the importation to ascertain the rate to be charged under paragraph 88." After holding that the collector was right in adding the *value* of the barrels to the *per se* value of the cement, the court stated that the barrels were not dutiable by weight under the provisions of that act, and that under the provisions of section 2898 of the Revised Statutes "the weight of coverings is allowed as tare."

In the case of *United States* v. *Hirsch, Stein & Co., supra,* it appears that certain "sheet glue packed in bags" was imported under the tariff act of 1913, and that the glue was dutiable under paragraph 34 of that act at 1 cent per pound if "valued not above 10 cents per pound" and at 15 per centum ad valorem if "valued above 10 cents per pound and not above 25 cents per pound."

The merchandise was assessed by the collector at 15 per centum ad valorem.

The importer protested the collector's classification, claiming that as the glue there involved was invoiced, bought, sold, and appraised upon the basis of gross weight or, as stated in the protest, "gross for net," the proper rate of duty should have been ascertained by dividing the total dutiable value returned by the appraiser, by the gross weight of the merchandise.

It appears from the decision in that case that the gross weight of the glue and the bags was 21,977 pounds; that the net weight of the glue was 21,527 pounds; and that the "total dutiable value" of both the glue and the bags was $2,171. Whether that value included the weight of the bags is not stated in the decision. The total dutiable value of the merchandise there involved would, of course, include both the value of the glue and the value of the containers or coverings and all other costs, charges, or expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, in accordance with paragraph R of section III of the tariff act of 1913.

The court there stated that should the "total dutiable value"— $2,171—

* * * be divided by the gross weight in pounds, viz, 21,977 pounds, in order to determine the value of the glue per pound, the value would be fixed at less than 10 cents per pound, and the applicable rate of duty would be 1 cent per pound. On the other hand, if the total dutiable value be divided by the net weight of the glue in pounds, viz, 21,527 pounds, the resulting value would be more than 10 cents per pound, and the applicable rate of duty would be 15 per cent ad valorem.

The collector adopted the second method of calculation, that is to say, he divided the total dutiable value by the net weight of the glue, and accordingly found the value of the glue to be more than 10 cents per pound. Duty was thereupon assessed at the rate of 15 per cent ad valorem.

The court held, upon the authority of United States v. Francklyn, supra, that the collector was right in dividing the "total dutiable value" of the importation—$2,171—by the net weight of the glue, rather than by the gross weight of the importation, in order to ascertain the rate of duty under paragraph 34, supra, and in so holding, stated that the merchandise was purchased at a gross price in its packed condition; that the weight and value thereof were invoiced and entered in gross; that the entry disclosed the separate value of the bags and their weight; that the appraiser approved the entered value; that the appraiser made the following endorsement on the entry—"Glue val. not over 10 c. lb. 1 c. lb."; and that "It is manifest, however, that this entry was designed by the appraiser as an advisory classification only, and not as an independent appraisal of value."

In the case of United States v. Stegemann, 12 Ct. Cust. Appls. 198, T. D. 40179, relied upon by counsel for appellant, but which counsel for the Government argue, and the court below held, is not in point,

it appears that certain gelatin in sheets was classified by the collector at the port of New York under paragraph 34 of the tariff act of 1913 at 25 per centum ad valorem because he found, by his method of determining dutiable value, that the value of the gelatin was more than 25 cents per pound.

It was claimed by the importer in that case that the gelatin was valued at more than 10 cents per pound but not more than 25 cents per pound and was, therefore, dutiable under paragraph 34, *supra*, at only 15 per centum ad valorem.

It was there pointed out by this court that it was the duty of the collector, under the provisions of the tariff act of 1913, to classify merchandise and add to the appraised value thereof the value of containers and other costs and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, in order to find dutiable value, but that the collector had no power to appraise merchandise or to determine its unit market value, which authority was bestowed upon the appraiser.

The court further stated that the merchandise was appraised by the appraiser at a value which did not exceed 25 cents per pound; that the appraisement was disregarded by the collector in determining the classification of the merchandise; and, as stated in the decision

* * * he [the collector] evolved by an independent calculation of his own a unit of value higher than the maximum unit of value found by the appraiser. To accomplish that result he multiplied 4,565 pounds, the gross weight, by 25 cents per pound, the maximum unit of value found by the appraiser, and then *divided the gross value* thus ascertained *by 4,485 pounds, the net weight, thereby securing an extra-legal unit of value greater than 25 cents per pound.* Apparently, therefore, the *collector accepted the appraiser's maximum unit for the determination of gross value,* but *refused to recognize it as determinative of the duty which should be applied to the goods.* If the collector was dissatisfied with the appraisement he had a right to appeal to reappraisement, but he had no right to review the appraiser's finding or to make a new appraisement. [Italics not quoted.]

The court accordingly held that the collector should have assessed the merchandise in accordance with the final appraised value at only 15 per centum ad valorem under paragraph 34, *supra.*

Prior to the enactment of the Tariff Act of 1922, it was the duty of the appraiser to ascertain, estimate, and appraise the actual market value of imported merchandise, whereas it was the duty of the collector to determine the dutiable value of such merchandise. The appraiser had no authority to add to the *per se* value of imported goods the cost or value of containers or other charges and expenses incident to placing merchandise in condition, packed ready for shipment to the United States. That duty was bestowed upon the collector. See *United States* v. *Spingarn Bros.*, 5 Ct. Cust. Appls. 2, T. D. 34002; *United States* v. *Richard & Co.*, 14 Ct. Cust. Appls. 120, T. D. 41646; *United States* v. *Woolworth Co. et al.*, 22 C. C. P. A. (Customs) 184, T. D. 47126.

Under sections 402 of the Tariff Acts of 1922 and 1930, respectively, relating to value of imported merchandise, it is the duty of the appraiser, in appraising merchandise entered under either of those acts, to include in his appraisement the cost of all containers and coverings and other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Furthermore, it is the duty of the appraiser to ascertain and return the unit value of imported merchandise, rather than its total value. See *Igstaedter & Co.* v. *United States*, 11 Ct. Cust. Appls. 477, 478, T. D. 39570, and section 500 (a) (1) of the Tariff Act of 1930.

In the case of *United States* v. *Dorn & Co.*, 13 Ct. Cust. Appls. 130, T. D. 40961, the appraiser appraised certain woolen fabrics at the total entered value of $723.20, which included the cost of containers. He did not appraise the merchandise in the unit of quantity in which it was usually bought and sold in the country of exportation. There was no appeal for reappraisement and the appraiser's appraisement of the merchandise became final and conclusive against all parties. The fabrics were imported under the Tariff Act of 1922 and were dutiable under paragraph 1109 of that act according to their value per pound. The collector assessed the merchandise under paragraph 1109 of that act at 45 cents per pound upon the wool content thereof, and 50 per centum ad valorem, rather than at 37 cents per pound and 50 per centum ad valorem, as claimed by the importer.

In ascertaining the applicable rate of duty under paragraph 1109, *supra*, the collector apportioned the total entered and appraised value—$723.20—according to the net weight of the fabrics.

It was contended by counsel for the importer that the appraiser appraised the merchandise at a unit value of not more than 80 cents per pound and that, therefore, the merchandise was dutiable at only 37 cents per pound and 50 per centum ad valorem under paragraph 1109, *supra*.

The court stated in its opinion that the appraiser had not appraised the unit value of the merchandise but, on the contrary, had accepted and adopted the total entered value of $723.20 and, accordingly, held that the collector had properly apportioned the total appraised value to the net weight of the imported fabrics in order to ascertain the unit value thereof, and that his assessment of duty was proper.

The only importance of that decision, so far as the instant case is concerned, is that there the court pointed out that the appraiser appraised the total value of the merchandise, rather than the unit value, whereas in the *Stegemann* case, *supra*, the appraiser ascertained and returned the unit value of the merchandise, and that instead of accepting the unit value returned by the appraiser, the collector

\* \* \* multiplied such unit value by the number representing the gross weight of the importation in pounds, and then divided the resulting product by the net weight of the gelatin, thereby arriving at a new unit value greater than that

returned by the appraiser. *The effect of this exercise in mathematics by the collector was to regard the difference between the gross and net weights, some 80 pounds, as gelatin for one purpose but not for another,* whereas the *value* of whatever constituted the 80 pounds, presumably coverings or containers, was the only thing which could be considered by him in any event. [Except for the word "value," italics supplied.]

Counsel for appellant here relies upon the decision of this court in the case of *United States* v. *Stegemann, supra,* section 315, *supra,* article 823 (*e*) of the Customs Regulations of 1937 which was redesignated as 823 (*d*) in T. D. 49658, and section 503 (c) of the Tariff Act of 1930.

Article 823 (*d*) has reference to section 315, *supra,* and provides:

(*d*) Where goods are subject to an ad valorem rate of duty and it appears from the invoice, bill of lading or other source of information that the merchandise was bought on the basis of the gross weight or quantity, *the appraiser's report should show whether the appraisement was made on the basis of the gross or net weight or quantity, and the liquidation should be made upon the same basis as that upon which the appraisement was made.* [Italics ours.]

Section 503 (c), *supra,* reads:

(c) BASIS OF RATE.—For the purpose of determining the rate of duty to be assessed upon any merchandise *when the rate is based upon or regulated in any manner by the value of the merchandise, the final appraised value shall* (except as provided in section 562 of this Act) *be taken to be the value of the merchandise* [Italics ours.]

Article 823 (*d*) which relates to section 315, *supra,* was evidently prepared and promulgated in view of the provisions of sections 402 and 503 (c), *supra,* and when read in the light of those provisions, we think its provisions are clear, unambiguous, and mandatory.

Section 503 (c), *supra,* clearly provides that in order to determine the rate of duty to be assessed upon imported merchandise, "when the rate is based upon or regulated in any manner by the value of the merchandise," as in the instant case, the collector is bound by the final appraised value of the merchandise. The provisions of that section are so clear and unambiguous that it is strange that there should be any doubt as to their meaning.

It is agreed by counsel for the parties, for the purpose of this case, that the collector properly computed the total dutiable value to be $842 by using the final appraised unit value of the merchandise. Accordingly, it is unnecessary for us to determine whether the collector properly determined the total dutiable value to be $842. Accepting that figure, as we must for the purpose of this decision, as the total gross dutiable value, we think it was the manifest duty of the collector, in order to ascertain the value per ton of the involved merchandise, to use the gross landed weight in accordance with the gross dutiable value, to properly ascertain the value per ton of the merchandise in question.

If either the collector or the importer was dissatisfied with the inclusion of the weight of the containers as a part of the appraised unit value, an appeal for reappraisement should have been taken under the provisions of section 501 of the Tariff Act of 1930.

We are of opinion, therefore, that the issue in the instant case is controlled by the statutory provisions and the customs regulations, hereinbefore set forth, which were not in existence when the decisions in the cases of *United States* v. *Francklyn* and *United States* v. *Hirsch, Stein & Co., supra*, were rendered; that the decisions in those cases are not controlling of the issue in the instant case; and that the collector had no authority to consider the weight of the containers as *talc* in determining the total dutiable value of the merchandise, and consider the weight of the containers as *tare*, and *not talc*, in determining the value per ton in his assessment of duty under paragraph 209, *supra*. In other words, he had no authority to treat the gross weight of the merchandise as talc "for one purpose but not for another."

We conclude, therefore, that the trial court was in error in affirming the action of the collector.

For the reasons stated, the judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.